**Vincent ALOI, Petitioner,**

v.

**Robert ABRAMS, Attorney General of the State of New York, Respondent.**

No. 80 Civ. 5412 (GLG).

United States District Court, S. D. New York.

Oct. 27, 1980.

Gerald L. Shargel, New York City, for petitioner.

Robert M. Morgenthau, Dist. Atty., County of New York, New York City, Attorney for respondent; Robert M. Pitler, Attorney–in–Charge Appeals Bureau, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

Pursuant to Rule 4 of the Rules for Habeas Corpus Petitions, this petition has been reviewed to see whether it may be dismissed on the face of the petition.

This petition is brought following a torturous procedural history, a part of which may be recited as follows: On August 7, 1973, petitioner was convicted of perjury in New York State Supreme Court and sentenced to a term of from 2⅓ to 7 years' imprisonment. The conviction arose out of his allegedly false testimony given in 1972 before a grand jury investigating the murder of the notorious Joey Gallo. During the direct appeal in state court petitioner was released on bail. In 1974, while out on bail, Aloi was convicted in federal court of a securities law violation and sentenced to nine years imprisonment. He commenced serving the federal sentence and a state detainer was lodged with the federal authorities.

On October 13, 1978, this Court granted petitioner habeas corpus relief from his state conviction. The basis for the relief was that petitioner's Fifth Amendment privilege against self–incrimination had been violated by the introduction of his immunized truthful grand jury testimony in a subsequent perjury prosecution of petitioner based on other, false testimony before the same grand jury. On March 13, 1979, the Court of Appeals for the Second Circuit affirmed this Court's judgment. The state petitioned the Supreme Court for certiorari.

On June 11, 1979, after vacating the previously imposed sentence of nine years, District Judge Knapp resentenced petitioner to time served on the federal securities law conviction. On June 15, 1979, this Court ordered petitioner released on a $50,000 surety bond pending final disposition by the Supreme Court.

On March 3, 1980, the United States Supreme Court decided *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980), holding that the Fifth Amendment was not violated by introduction of a person's immunized truthful grand jury testimony in a subsequent prosecution for false declarations before that same grand jury. On March 17, 1980, the United States Supreme Court vacated the Court of Appeals' judgment in this case and remand-

ed the case to the Court of Appeals for further consideration in light of the *Apfelbaum* case. (Petitioner was continued free on bail.)

On June 2, 1980, the Court of Appeals vacated its March 13, 1979 judgment and ordered the District Court "to vacate its judgment and to dismiss the petition for a writ of habeas corpus in light of *Apfelbaum*." *

On June 5, 1980, this Court dismissed the petition. On June 6, 1980, petitioner moved to vacate the District Court's order dismissing the petition, pointing out that the mandate from the Court of Appeals does not properly issue until twenty days after the order and that he intended to move for reargument. On or about June 10, 1980, petitioner made application to the Court of Appeals for rehearing and a hearing en banc. Consequently, on June 16, 1980, this Court vacated its order dismissing the petition. However, on August 25, 1980, the Court of Appeals denied the petition for rehearing and a hearing en banc. Thereafter, on August 29, 1980, petitioner made a motion seeking a stay of the mandate and a continuation of bail pending his petition for certiorari. On September 26, 1980, that motion was denied. The result was that, on October 3, 1980, the order and mandate of June 2, 1980 dismissing the petition, became final.

In his application of June 6, 1980, petitioner brought to the attention of this Court the fact that the original petition for habeas corpus had two parts. The first, on which petitioner succeeded before this Court, was that, as part of proving the petitioner's perjury at the state trial on whether he had been at an apartment in Nyack, New York, the prosecution introduced substantial immunized truthful testimony previously given by the petitioner concerning the petitioner's position as the leader of a crime family and the fact that Gallo's death was the result of a war between two organized crime groups, thus unfairly influencing the jury.

Plaintiff's second ground was that he had been deprived of his right to due process under the Fourteenth Amendment by the prosecution's "egregious misconduct at trial." In view of the Court's favorable disposition to the petitioner's self–incrimination claim, we did not reach the due process argument. *Shargel v. Fenton*, 459 F.Supp. 700, 707 (S.D.N.Y.1978).

In his motion of June 6, 1980, petitioner pointed out that the Court of Appeals, in remanding the case with directions to *dismiss* the petition, had apparently forgotten that there was an outstanding unresolved issue. He requested this Court to advise the Court of Appeals of its error. He was informed that it was not a function of a district court to correct appellate errors and that he would have to make application himself. Consequently, when he made the June 10, 1980 motion for a rehearing (as well as a hearing en banc), his first point was "to correct a procedural error ... contained in this Court's order of June 2, 1980." The next two pages, of the six page brief, argued that it was "crystal clear" that the Circuit Court's order of June 2 could not stand until there had been a consideration of the alternate ground.

Several months passed until, on October 3, 1980, the Court of Appeals ultimately filed with the district court the same mandate that it had prepared on June 2, 1980. It still directs this Court to dismiss the petition for a writ of habeas corpus. The question before this Court is whether the new petition, which attempts to raise the due process issue, is foreclosed by the actions of the Court of Appeals.

■ Initially, petitioner's counsel argues that considerations of res judicata never apply to habeas corpus petitions, citing *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), and *United States ex rel. Lewis v. Henderson*, 520 F.2d 896, 904 (2d Cir. 1975). This is literally

---

* This Court does not agree that *Apfelbaum* necessitated a reversal. The Second Circuit did not write an opinion contrasting the two cases.

true. The strict doctrine of res judicata does not apply to habeas corpus, but a district court has discretion to deny a successive application if the claim asserted was heard and determined on a prior application. *See Salinger v. Loisel*, 265 U.S. 224, 44 S.Ct. 519, 68 S.Ct. 989 (1924). Moreover, the habeas corpus statute, 28 U.S.C. § 2244, specifically provides that a district judge shall not be required to entertain a writ "if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not heretofore presented and determined . . . ." Finally, if the Court of Appeals has decided the due process issue, it is clearly the law of the case.

Petitioner's argument is that on the remand from the Supreme Court, the Court of Appeals concentrated its attention upon the effect of *Apfelbaum, supra*, on its earlier decision and overlooked the presence of an additional issue. That is a possibility; but petitioner then argues that, when confronted with a motion for reargument that raised as its first issue the inappropriateness of directing a dismissal of the petition rather than a remand for purposes of consideration of the remaining issue, it was again overlooked. To accept this argument, one would have to assume that the various judges and clerks of the Court of Appeals are paying no attention whatever to the papers filed before them. This we clearly cannot do.

Petitioner argues that it is indeed strange that the order and mandate of the Court of Appeals do not at least make some comment upon the problem and explain why there is no further need for a consideration of the due process issue. There appear to be several bases upon which the court could have acted. Initially, as this Court noted in its first opinion, *Shargel v. Fenton, supra*, there was a serious question as to whether the federal courts have jurisdiction to reach the merits of the claim since, under state law, petitioner may have waived the right to raise the due process issue. That issue had been bouncing around the courts for some period of time and other district judges had denied earlier petitions for failure to exhaust state remedies, *e. g., U. S. ex rel. Aloi v. Arnold*, 413 F.Supp. 1384 (S.D.N.Y.1976), and for failing to present the issue to the state court at the appropriate time (a waiver), *Aloi v. Fenton*, No. 77–316, slip op. at 5–6 (S.D.N.Y. May 27, 1977).

An additional consideration that might have motivated the Court of Appeals to preclude further consideration of the due process claim is that it is inextricably intertwined with the self–incrimination claim. Indeed, the state court judge hearing the matter, Mr. Justice Robert Haft, so decided on December 14, 1976, when leave to appeal his earlier decision was denied.

Under these circumstances, I am compelled to conclude that the Court of Appeals has decided the due process claim adversely to petitioner, and I am prohibited from any further consideration of it. Consequently, pursuant to the rules, I am dismissing the petition without requiring an answer. However, I am issuing a certificate of probable cause because of the somewhat unusual fact that the Court of Appeals made no reference whatever in its order concerning the open due process claim. I do this despite the Second Circuit's suggestion that "it will be the rare case in which the district judge issues the certificate of probable cause to appeal after he dismisses the petition . . ." without requiring an answer, *Alexander v. Harris*, 595 F.2d 87 (2d Cir. 1979), because it is the intentions of the Court of Appeals that are at issue and not the position to be taken by the respondent. This is one of those situations where the district court is more than willing to comply with the directions of the Court of Appeals but admits some uncertainty as to what that court requires of it. *See Ford v. Cunningham*, No. 79–748 (S.D.N.Y. May 19, 1980).

SO ORDERED.