THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LARRY WILLIAMS, Appellant.

Fourth Department, December 17, 1982

APPEARANCES OF COUNSEL

*Eric M. Alderman* for appellant.

*Richard Hennessy, District Attorney* (*John Cirando* of
counsel), for respondent.

**OPINION OF THE COURT**

CALLAHAN, J.

Defendant, with others, was charged with two counts of
criminal possession of a weapon in the third degree (Penal
Law, § 265.02, subds 1, 4). The charges arose when a search

of an automobile in which defendant was a passenger revealed a sawed-off shotgun and ammunition under the front passenger seat. The search followed a shooting incident that occurred earlier that evening when shots, fired from a car matching the description of the vehicle in which defendant was riding, struck a house in the City of Syracuse. Charges against the others were ultimately dismissed. Defendant was convicted after a jury trial of criminal possession of a weapon in the third degree (Penal Law, § 265.02, subd 4).

Prior to trial, defendant joined in omnibus motions made by his codefendants seeking, *inter alia,* to dismiss the indictment on the ground that the weapon in this case, a sawed-off shotgun measuring 25¼ inches in over-all length, was not a "firearm" within the meaning of subdivision 3 of section 265.00 of the Penal Law. In denying the motion, the court held that "the issue of concealability must be determined on a case-by-case basis after due consideration of the nature, type and construction of the 'firearm' allegedly involved". At trial, defendant's counsel, citing this court's decision in *People v Eldridge* (53 AD2d 1037), again moved to dismiss on the ground that the prosecution had failed to prove a prima facie case since there was no proof that the weapon defendant possessed was "of a size which may be concealed upon the person". The trial court denied the motion, holding that the concealability of the weapon was a question of fact for the jury.

A person is guilty of criminal possession of a weapon in the third degree when he possesses any loaded "firearm" (Penal Law, § 265.02, subd 4). At the time of defendant's arrest and trial, "firearm" was defined in the Penal Law as "any pistol, revolver, sawed-off shotgun or other firearm of a size which may be concealed upon the person". (Penal Law, § 265.00, subd 3.)*

---

\* The Legislature has recently amended the statutory definition (L 1982, ch 492, eff July 13, 1982), to read as follows: "3. 'Firearm' means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than twenty-six inches; or (c) a rifle having one or more barrels less than sixteen inches in length and any weapon made from a rifle

The weapon in defendant's possession was a Topper Model 148 shotgun that had been sawed off. It was established at trial that the barrel of the gun had been shortened and now measured 15 inches. It was further established that the stock or butt of the gun had likewise been shortened and measured 13¼ inches. The over-all length of the gun was 25¼ inches. When discovered under the seat of the vehicle, it was in a broken position with the stock and barrel separated. The gun was unloaded but there was one round of live ammunition near the gun and four rounds under the driver's seat.

The former statutory definition of "firearm" was the source of much confusion. As one court recently stated: "Beyond agreement that a sawed-off shotgun serves no lawful or legitimate purpose, there appears to exist considerable conflict and confusion concerning when a sawed-off shotgun qualifies for inclusion under the statutory sanctions of subdivision 3 of section 265.00 of the Penal Law" (*People v Davis,* 112 Misc 2d 138, 142; see, also, *People v Cortez,* 110 Misc 2d 652). In an effort to eliminate this confusion, the Legislature amended the statute to redefine "firearm".* It fixes a criteria in terms of lengths and measurements which establishes a standard by which defendant would be guilty as a matter of law.

At the time of defendant's trial, however, and under the now repealed statutory definition, the gist of the crime was concealability (*People v Purpera,* 81 AD2d 1007) and the question of whether a particular firearm was "of a size which may be concealed upon the person" (Penal Law, § 265.00, subd 3) generally was one to be resolved by the trier of fact (see, e.g., *People v Cohen,* 57 AD2d 790; cf. *People v Eldridge,* 53 AD2d 1037). There is no basis here for departing from the general rule and, accordingly, the

---

(whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches. For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm."

trial court did not err in submitting the issue to the jury for its determination.

■ On the trial of this case, during the People's opening statement, the prosecutor read the indictment to the jury and informed them that the concealability of the gun would be an issue for their determination. After addressing the jury for about 10 minutes, stressing the issue of concealability of the weapon, the prosecutor then revealed to the jury that he had the weapon in question concealed on his person during his entire opening statement and displayed it to them. Defense counsel promptly excepted and moved for a mistrial. The court denied the mistrial motion and failed to admonish the jury to disregard the demonstration. Additionally, the prosecutor was not admonished by the court for his behavior in the presence of the jury, nor were any curative instructions given by the court in its charge to the jury. By demonstrating to the jury that he could conceal the weapon, the prosecutor became an unsworn witness. Since concealability of the weapon was the crucial issue at trial, such conduct creates a substantial likelihood that prejudice resulted from the prosecutor's conduct (see *People v Paperno,* 54 NY2d 294, 300; *People v Vance,* decided herewith, 89 AD2d 347). In our view, the image of the gun being dramatically removed from hiding beneath the prosecutor's clothing could never be dispelled from the minds of the jury. When there have been no curative instructions by the trial court (*People v Broady,* 5 NY2d 500), such conduct constitutes reversible error mandating a new trial.

■ The court correctly denied a request to instruct the jury that they must find that the weapon was being concealed by the defendant. The jury was not required to find that the weapon had actually been concealed by this defendant, but merely that it was concealable. The court, however, erred in denying the request to charge that "person" meant "average, ordinary person" and then giving a "bare bones" charge requiring "concealability on the person." The People demonstrated through a police officer who gave his height as 6 feet, 5 inches, wearing a jacket, several ways he could conceal a weapon on his person. The defen-

dant, who gave his height as 5 feet, 10½ inches, was not able to conceal the weapon at trial. For the purposes of subdivision 3 of section 265.00 of the Penal Law "person" should be defined as "an average person garbed in a manner to aid, rather than hinder, concealment of the weapons." (*United States v Powell,* 423 US 87, 93.) The use of a well above average witness to demonstrate concealment could lead the jury to assume that a weapon is concealable if any person could conceal it. Inasmuch as the jury was exposed to these demonstrations, it is unlikely that they would interpret the "bare bones" charge to mean "an average person garbed in a manner to aid, rather than hinder, concealment".

We find no merit to defendant's contention that he was not effectively represented by counsel on this trial. Not only did defendant's attorney provide meaningful representation at the trial, but he adequately and appropriately protected the record for appeal to such a degree that the judgment of conviction should be reversed and a new trial should be granted.

DILLON, P. J., SIMONS, BOOMER and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law and facts, and new trial granted.